May it please the Court. In this case, the question is, can Flagstar Bank make a claim in this forfeiture case as the beneficiary of a constructive trust? The answer is yes, under the Boylan decision of the Ninth Circuit. Boylan interprets California law to indicate that when a fraudster takes property, it's impressed at that moment with a constructive trust for the victim. He's the involuntary trustee, and all those who take afterwards takes the property impressed with a constructive trust. I thought the lender here was the mortgage company. I'm sorry, your Honor? I thought the lender here was Excel. The lender here is Flagstar Bank. I know by here, I know Flagstar is here. But when I read your complaint, I thought Flagstar, that Excel was the mortgage lender, had a line of credit basically with Flagstar. Flagstar gave money to Excel. Excel would then lend it out. And it may indeed, Excel may have directed the money go direct to avoid a stop. But I thought that the money was actually, the deal was between Excel and Flagstar. That's actually not correct. According to the complaint. Excel was like a mortgage broker, and they requested, they requested that Flagstar send the money to, for the purchase of the secured interests in property. Excel was more like a... The complaint seemed to say that Excel was actually doing the blowing. The government... And that there was an anticipation that Excel would then turn the mortgage back over to Flagstar. I don't think that's accurate based upon my reading of Exhibit B and the declaration. The complaint in this case included both the declaration of the FBI agent and the Flagstar claim in the California State Court against Mr. Loomis. So what's your reading of the declaration, the exhibit that would change the state of affairs? First of all, it said that Excel just requested that Flagstar send their money, send its money through Contemporary to the escrow company. The escrow company was not supposed to send it on. It was actually an express trust with the escrow company. So Excel, it was not Excel's money. It was Flagstar Bank's money that Excel just requested as the mortgage broker. But to what end? To purchase these properties, to become the lender, the mortgage holder. Flagstar Bank was to be the secured party on these, on the loans. So once a bank provides the financial wherewithal for the purchase of property, it's no longer the bank's money, is it? Well, it's impressed with a constructive trust because it was a fraud. So, yes, it is the bank's money under Boylan and under California law because the fraudster was not entitled to the money. But immediately under California law, it's impressed with a constructive trust in everyone else who takes their assets. Boylan sort of short-circuited it, but it strikes, as I recall, California law, you've got to be able to trace also. But here it does seem, in this case, if one had to trace funds, the funds do, the funds are the funds in question. They weren't commingled with a bunch of other funds. No, they were not. Actually, if you look at paragraph of the declaration in the complaint, paragraph 52 and 53 and 65. 52 and 53 indicate, I have probable cause to believe the funds may be traceable to Flagstar Bank. Paragraph 65 describes the exact process by which a cooperating witness, excuse me, a CW1, described the transactions. Now they're going, now the money's going to be sent. And it was August 26th, and the money was seized by the government on the 27th. You're reading, you keep telling me that the declaration says something different from the way I read it. So I want you to straighten me out on that. Thank you. Because 53 says, basically, that Excel had a warehouse line of credit with Flagstar. And Flagstar argues here it's a third-party beneficiary of the contract between Excel and the Loomis people. Right? So third-party beneficiary is a very different animal from I have a contract with the Loomis people. What it looks like here is that Excel is an independent company, has a line of credit. Line of credit usually means you can draw money down from your line of credit, I mean, in most situations. So if Excel could draw in its line of credit, I assume it was drawing in its line of credit so it could make a loan to somebody. It had an agreement with Flagstar to use, that that Flagstar's money would be used for this purpose. I don't care about it was going to use Flagstar's money. That's not the point I'm making. That's not my question. Of course, Flagstar would say, but if we're going to let you draw in your line of credit, you've got to use it in an appropriate way. Fine. I'm not asking that. What I'm saying is, this thing says that the money was essentially borrowed by Excel from Flagstar, was then loaned from Excel to the borrower, and maybe, and it says here, and it was maybe going to send it back to Flagstar after the deal was done. But the loan, it looks to me, went from Flagstar to Excel. That's what it says here. I think there are several different ways in which it is worded throughout the declaration and the complaint. And I noticed that it was Flagstar Bank that is to have the secured interest. Excel has no interest in the loan. They do have a secured interest, ultimately, but the point, but you're not answering my question. I mean, if you're saying that what Flagstar has done is played a lot of games in this declaration, so we can't trust it, I'll buy that. No, the declaration was me. What it says, though, is, what the declaration says, is that Excel was drawing on its line of credit with Flagstar. Now, when Company A draws on a line of credit with Company B, that generally means that Company A owes money to Company B because they just took a loan. Are you saying that's not true? Your Honor, I'm actually. I would have to make inquiry to ascertain the exact relationship. But to my understanding, they were. Do you want us to rely on the complaint or not? That's the point. Yes, Your Honor. The complaint, the forfeiture complaint and the declaration of the agent and the complaint to Flagstar itself, in which it says that Excel requested that Flagstar send their funds. Yes. I understand what the Court is saying. I understand it's that we're going to draw on our line of credit by having you send the money directly to X. I understand that. I might say to somebody, to my bank, assuming I had a line of credit, I'd like to draw on my line of credit. I want you to send a check to Joe Dose. But the loan from the bank isn't to Joe Dose. It's to me because I'm drawing on my line of credit. Isn't that how line of credit usually works? Well, I'm not certain that this line of credit worked that way. This particular situation, in this particular situation, that the funds are belonging to Flagstar Bank and Flagstar Bank is the one that is out the funds, not Excel. So it didn't seem to the funds. You keep saying that. There's no question the money originally belonged to Flagstar. There's no doubt about that. Of course it did. Now, if the money belongs to Bank of America and I draw my line of credit and I'm not committing fraud, I draw my line of credit, do I now have any money or is it still belonging to Bank of America? It's my understanding the funds never went to Excel. If I draw my line of credit by saying to the bank, I'd like to draw my line of credit, please send the money to Joe Blow, did I just borrow money or did Joe Blow borrow it? Your Honor, I don't know. With that particular situation and in this particular situation, it's my understanding that Flagstar was working with Excel on these loans and that they were going to have these secured interests. I understand. I'm sorry, I have to. No, I understand. I understand what you're talking about. The funds were designed so that Flagstar Bank would be a secured party. Instead, the funds went to a title company and an escrow company which belonged to the fraudster and then to the Loomis account from which it was seized. The FBI agents have believed throughout the case that the funds belonged to Flagstar Bank and the informant did mention the funds were coming from Flagstar Bank. So we are relying upon those and in the complaint itself, the fifth claim for relief is that the funds were owned by a financial institution traceable to a scheme to defraud the financial institution. And so that's the government's theory. If there were a trial, that would have to be proved. So that's why we believe the funds are Flagstar Bank's and when Flagstar released the funds, they were impressed with the constructive trust because they were involved in fraud. Now, the Eastern District of California has shown some hostility to the Boylan case and in several cases, including this one and the Glen Mady case and the Wilson case, which is still pending, the... Are you responsible for all of those cases? I am not. I am not. But the Glen Mady and Wilson are the same case. Glen Mady is the same case as Wilson. Glen Mady, there was no opposing side. It was a default judgment and the court took that opportunity to conflate those with a constructive trust with general creditors to say that they didn't have prudential standing and were relegated to the remission process. Do you think that we should wait for the outcome of the Wilson case since that panel has priority in terms of deciding this issue? It's... I think it's a little bit different because it's a criminal forfeiture case and the judge in Wilson did go off on another tangent than our judge did not follow. It went off on a tangent saying that the government came in and took the interest under the Relation Back Doctrine, which our judge didn't follow, and that was because the Wilson court misconstrued the Hooper case. And the Hooper case confirmed that the Relation Back Doctrine is not... does not take place until the government has a final judgment of forfeiture so that some innocent owners can make claims, not just... just donees cannot make claims. That was basically the Hooper case that we think Wilson misconstrued. Our judge did not go that far. He just ruled on prudential. But won't the panel in Wilson decide the fundamental question of whether or not the lender or the entity that provides the funds has Article III standing? Well, they will decide. They have Article III standing. It's prudential standing that became an issue. Prudential standing is just another name for an old theory of remission. It's relegating fraud victims who can't actually identify and trace their property to the remission process, where you're locked out of court, you have to beg the government executive for your property. But isn't the Wilson court going to decide both those issues, the Article III standing and the prudential standing? Aren't both of those issues before the Wilson court? This is before the Wilson court, but I thought perhaps this court may want to have some input into the decision in case the court did not agree with what was going on in the Wilson case. We can't. The prior panel has priority in terms of resolving issues that are the same. It's true, and it's been pending since September. I think they may be having a difficult time. But I wanted to make the argument here that fairness, the government says this is all about fairness, but the embodiment of fairness is due process, and one should not be relegated. Where one can identify and trace one's property, one shouldn't be relegated to just write a letter, but should have the due process rights of discovery and witnesses and hearings, and that's basically what our system is. I take it what you say then, if indeed there's a constructive trust, if indeed there is, then you can't be relegated to the rights of a general creditor because you're not a general creditor. You're a beneficiary of that trust. Is that correct? That's what I'm saying. And that's the whole remission argument. That's what this whole case is because the judge only ruled on prudential standing. That was the only ruling he made, that they had no prudential standing, you know, rejecting Boylan. And in the central district, of course, there's the Kim cases where even the government lost on summary judgment in the Martin Lane case, and the two constructive trust claimants are still going forward on their claims. But to get to prudential standing, you first have to determine whether or not there's Article III standing. Well, that's correct. And any person who has an ownership interest can file a claim under 983A4. I'm not certain how much time I have left. You have 21 seconds. I will reserve that. Thank you. Good morning. Stephen Casella for the United States. In forfeiture cases, the court looks first to State law to see what interest the claimant has in the property. And then it looks to Federal law to see whether that interest is sufficient under the scheme that Congress has determined to allow the person to prevail in the forfeiture action. If the claimant has no interest in the particular property under State law, the inquiry ends, and we never reach the Federal question of whether or not the interest is sufficient to prevail under Federal law. And that's the case here. Because the Article III question. I'm sorry? So you're talking about Article III standing now. Is that correct? Both. You're right. If the person has no interest in the property at all, it doesn't even have Article III standing, and we never reach the prudential standing question. Yes. So now we're talking about do they have a constructive trust interest. Is that what we're talking about? That's right. Because if they were merely an unsecured creditor, this Court's decision in $20,193, the Berberian case, makes clear that an unsecured creditor has no interest in the property under State law and therefore cannot prevail. And Congress codified that principle six years later in CAFRA. The same at the same time that it expressly excluded unsecured creditors from the definition of owner in the innocent owner statute, it simultaneously and not coincidentally provided unsecured creditors with a remedy under Section 981e6, that is, the remission process. Assuming without conceding, you don't have to concede this, horror of horrors, perfectly clear under California law that Flagstar has a constructive trust, that money is held in constructive trust for Flagstar's benefit. Because let's take Excel out for a moment. Flagstar gives the money over. It can be traced perfectly to this particular account, and so it's beneficiary of a constructive trust. Assuming that for the moment, is it still your position that they're relegated to the general creditor status, or are they now, can they now at least claim to be a, I'll call it an innocent owner for the moment? If Flagstar really had a constructive trust under State law, then we would move on to the Federal question. And there are two aspects to the Federal question which we would have to decide, this Court would have to decide. And one is the temporal requirement that the constructive trust arise before or after the government's interest under the Relation Back Doctrine, and the other is whether or not Congress, in enacting the remission provision, excluded Flagstar and others like it from the zone of interest to be protected by the statute. But the important point is that tracing is not sufficient to establish a constructive trust under California law. Under California law, a constructive trust is an equitable remedy. And when a Federal judge is presented with a petition by a claimant asking that a constructive trust be imposed, the judge is not a bystander bound by a predetermined result. The judge has to apply his or her mind to the problem and determine whether or not the principle, principles of equity are satisfied. And what are those? But, counsel, in this case, the declaration from the FBI agent seemed to trace the monies back to the bank. I'm willing to, let's assume for the sake of argument that we could trace. That's not the only element. The other elements of a constructive trust under principles of equity include does the claimant have clean hands? We assume that they do. Does the claimant lack an adequate remedy at law? Was there a fiduciary relationship between the claimant and the other party? And the most important of all is, is it fair to impose the constructive trust with respect to the impact that would have on similarly situated parties? Now, are you saying that the district court considered all of those matters in making this decision? It did not. Apparently, the district court simply assumed that, in this case, we would just jump to the Federal question, and the district court held that because, in the district court's view, Congress had excluded beneficiaries of constructive trust in this situation. That is, the district court said, let's assume that under California law, equity is not to be considered. Would Congress have included such a claimant within the zone of interest protected by the statute? The district court said no. Just so I understand where you are procedurally, so if the district court did not consider all of those items that you articulate as going into the decision of a constructive trust, if the district court didn't consider all of those, may we assume that the district court internalized those and came to the decision that constructive trust was extant? No, I don't think so. I think that because there's a two-step process here, first you look to State law, and if the State law interest is not present, then the inquiry ends. If the State law interest is present, you jump to the – you go on to the Federal question. The district court may well have just jumped to the Federal question, which is exactly what happened in the Romuno case in the Eleventh Circuit. In the Romuno case, the Eleventh Circuit has a case called Shefton, which is the Eleventh Circuit's version of Boylan. And in that case, court assumed that there was a constructive trust under State law and went directly to the Federal question. That is, the Shefton court did. So what are you asking us to do in terms of the district court's determination on the constructive trust issue? Well, I think that since the district court was able to decide this case on the papers, this court may be as well and find that on the papers it's clear that the elements of a constructive trust under California law are not satisfied, or the court could remand it to the district court and ask them to conduct that equity analysis. Because under the equity analysis, the claimant can prevail only if it succeeds on establishing all of the elements. Now, what case are you relying upon to support your argument that in a forfeiture case, in the context of determining whether or not a constructive trust exists, the court has to consider all of these matters? Give me a forfeiture case with constructive trust that supports your argument. Romuno in the Eleventh Circuit and Andrews in the Tenth. Nothing in the Ninth? This Court has held many times that you do this two-step analysis, State court, State law analysis of whether the defendant, the claimant has an interest, and then you move on to the Federal analysis. But it has not yet done that in a constructive trust case. But Romuno and Andrews are exactly on all fours with this case. In both of those cases, what the courts ultimately held was you didn't reach the Federal question, prudential standing and temporal argument, you didn't reach that until the claimant established that he had to satisfy all of the elements of a constructive trust under equity. Do you want to deal with Boylan? I'm sorry? Boylan. How about Boylan? Well, Boylan holds that a beneficiary of a constructive trust has standing, certainly. But the issue here is not. Are we talking about standing today? We are talking about standing. Oh, okay. So do you want to talk about Boylan? We're not only talking about standing, though, because once. Well, that's. We're only talking about standing, aren't we? Here's what's interesting about the constructive trust issue. The claimant has to establish a constructive trust in order to have standing, but the claimant also has to establish a constructive trust in order to prevail on the merits. So it's not clear whether you have a chicken and egg problem. At some point, they have to establish the constructive trust. But jurisdiction comes first, right? Usually. I understand. There are areas where you have to decide them both together. But since they have to be decided, since ultimately you have to establish a constructive trust, I mean, it's. Well, Boylan said you've got standing. We know that, right? If you have one, you have standing. Correct. But as you said earlier, Your Honor. Correct. Boylan a little bit short-circuited the process. They didn't even talk about tracing. It did, but it is our short circuit. So there you have it. Well, but that's exactly the point in the Eleventh Circuit. The claimant in the Eleventh Circuit in the Romino case said Shefton had held that a constructive trust arises automatically, and the Eleventh Circuit said, no, it didn't. Well, but we said in Boylan that they are the beneficiaries of the constructive trust. So there is an implicit finding or an implicit holding in that case that there is a constructive trust. Except that the next thing they say is at the very end of the opinion is that they remand to the district court to allow the claimant to prove up its constructive trust. Now, they talk about proving it up in terms of was there or was there not a fraud, but the constructive trust was not established in the Ninth Circuit. It was left to the district court, and the district court had a burden of establishing at that point whether or not the elements of equity were satisfied, just as in the Romino case. But here's the problem. If we send it back to establish constructive trust and let the – and I understand your argument. If the court, district court in that case says, yes, there was a constructive trust, then I believe your argument would still be, aha, but that doesn't matter, because even if there were a constructive trust, you don't get prudential standing because you're not within the zone of interest. That's half of it, and the other half is you don't have a constructive trust that prevails because your interest did not predate the government's interest under the relation-backed doctrine, which is what this Court held in Hooper. When I argued – when I was here in Hooper, well, not here, it was in Pasadena. But when we argued Hooper, that was the discussion. When does the government's interest vest and when does a third party's interest vest who acquires their interest? And the Hooper – Is that issue – has that issue been joined in Wilson? Yes. That was – I listened to the oral argument in Wilson, and that was one of the issues which the Court might decide. But I must say that the majority of the argument of the 30 minutes of argument in Wilson was over Romuno and whether or not the Court should just adopt Romuno and go off on the State law question and never get to the Federal question. So I don't know, none of us know, whether the panel in Wilson will address the question and – on the State law issue and end there, or whether it will skip ahead to the Federal question. Under Hooper, the government has an interest that vests as of the date of the fraud. Under Hooper, a third party can trump the government's interest under the Relation Back Doctrine only if it has a preexisting interest. An interest that arises simultaneously, as the interest did in Hooper, is not sufficient. It has to predate. Now, we think that the Boiling Court was mistaken in holding that the constructive trust arises at the time of the fraud. There are three earlier Ninth Circuit cases that hold exactly the opposite, from 1998, 1985, 1995, and I provided the citations to the clerk earlier and to counsel. So I think that the Court was mistaken on that point. But even if it was not mistaken, even if constructive trust arises, as Boiling says, at the time of the fraud, it's simultaneous with the government's interest, not a preexisting interest. And it comes after Hooper, right? I'm sorry? And it comes after Hooper. Boiling came after Hooper. Yes. Right. Hooper came first. Yes. So Hooper would presumably be the control. Oh, no. The best you can get out of that is to ask it to go on block. Well, except that. The best you can do. But it didn't. Boiling didn't discuss the issue that Hooper discussed. Hooper said you have to have a preexisting interest. Boiling said, Boiling answered the question, when does a constructive trust arise? Boiling said, I think incorrectly, that it arises at the time of the fraud. But it didn't say it was a preexisting interest. Well, neither of those cases dealt with simultaneously, right? Well, Hooper did. Hooper dealt with a simultaneous, the government's interest arising at the time of the drug deal, the wife's interest under California community property law arising at the time of the drug deal. And the Court held that when the two arise simultaneously, the government wins, because you have to have a preexisting interest. That goes to the government. Exactly right. And that's the best way to describe it. That was a little bit. Brilliant. Well, brilliant, but there's some kind of factual thing driving that. It's pretty hard to swallow that the scumbag drug dealer just managed to vest his wife in half of the drug of the proceeds, basically, because of community property and she's innocent. You know, I can't tell you that. Part of advocacy is making sure that the right facts are used to present the legal principle. Sure. And that applies here. That applies here, because after all, at bottom, I have to sum up, at bottom here what we're talking about is a bank that wants to recover 70 percent of the remaining assets and leave the other 249 victims to divide the other 30 percent of the recovered assets. But that's what constructive trust is all about. If the law determines that the money was the bank's money in the first instance, then constructive trust gives the money back to the bank. I disagree, because this Court held in the Highway 75 case from Boise, Idaho, which is cited in our brief, that an element of constructive trust is fairness. And if the imposition of the trust It's not what Ballin says. If the imposition of a trust would be unfair to similarly situated parties, then the Court is not bound to impose it. In fact, it is bound not to impose it. And that's what the Court held in Romuno, and that's what the Court held in Andrews, and that's what we ask this Court to hold here. Thank you. Thank you. We understand your argument. Twenty-one seconds, I think. Your Honor, the government's interest can never arise simultaneously. Even Hooper says the government's title was not perfected until forfeiture was decreed. Until the forfeiture is decreed to the government, it is not perfected. Then it relates back to the time of the crime. So never can the government slip in and take. And the only other thing that Hooper said is that some third-party interests that intervene, like a constructive trust holder, would take precedence over the government. Just not donees. That's all Hooper said. And we don't have a donee here. We have a bank. And I would give an example of that it is fair to give the person with the constructive trust their funds. If you have a jewelry taken from by the same person from two neighbors and one's jewelry is recovered and the other one isn't and you can identify your jewelry and trace it, then our system is just and says that person should be able to go to court and get their jewelry back, not sell it and divide it up. And in this case, the money is Flagstar Banks. And under Boylan, they should be able to recover these funds. And I'll end there. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The final case on calendar, United States v. Lomas et al., is submitted on the briefs. And we are on recess until 9 a.m. tomorrow morning. All rise.
judges: Wells, Fernandez, Rawlinson